OLAF OSULDSEN, Respondent, v. THE DELAWARE, LACKAWANNA
AND WESTERN RAILROAD COMPANY, Appellant.

Second Department, May 22, 1925.

Railroads — accident in yards — action to recover for injuries suffered
when plaintiff was struck by empty cars which were being backed —
plaintiff was employed on lighter to unload ties for defendant and slept
on boat — at close of day's work and on return from supper he crossed
three tracks to reach his boat — route plaintiff took is immaterial,
since all routes led across said three tracks — instructions — court
properly instructed jury that if plaintiff was permitted to cross yard
defendant owed duty of reasonable care — verdict finding defendant
negligent supported by evidence — contributory negligence cannot be
based on fact that plaintiff did not cross at some particular place, for
no such place was shown to exist — verdict in favor of plaintiff on
contributory negligence sustained by evidence.

In an action to recover for personal injuries suffered by the plaintiff who was
employed on a lighter in the work of unloading ties for the defendant railroad,
and had the right to sleep on the boat, in which it appeared that the only way
the plaintiff could reach the street was to cross defendant's yard, and that after
the close of the day's work and on his return from his supper and while he was
attempting to cross three tracks running parallel with the dock, an empty car
which was being backed on the middle track ran over him, the fact that there
were two possible routes which the plaintiff might have pursued from the boat
to the street and in returning is immaterial, it being the contention of the
defendant that he pursued the wrong route, since it appears that, no matter
which route he followed, it was necessary for him to cross the three railroad
tracks in order to reach his boat.

The court properly instructed the jury that if they found that the plaintiff had
permission to pass through the yard of the defendant in order to reach the
street and to return to his boat, then the defendant owed the plaintiff all
reasonable care to see that no injury came to him while he was crossing the
tracks.

While there was sharp conflict in the evidence as to the circumstances surrounding
the accident, the finding of the jury that the defendant was guilty of negligence
is supported by the evidence.

Contributory negligence on the part of the plaintiff cannot be based on the fact
that he did not cross the tracks at some particular place, since the evidence
shows that the defendant had not designated any particular place to be used
by those crossing and recrossing the tracks, but that, as a matter of fact, those
who had occasion to cross the tracks did so at various points.

The verdict of the jury in favor of the plaintiff on the question of contributory
negligence is supported by the evidence.

APPEAL by the defendant, The Delaware, Lackawanna and
Western Railroad Company, from a judgment of the Supreme
Court in favor of the plaintiff, entered in the office of the clerk of
the county of Kings on the 13th day of November, 1924, upon the

verdict of a jury for $10,000, and also from an order entered in said clerk's office on the 18th day of November, 1924, denying defendant's motion for a new trial made upon the minutes.

*Douglas Swift* [*John E. Morrissey* and *W. S. Jenney* with him on the brief], for the appellant.

*Edward J. McCrossin*, for the respondent.

KELLY, P. J.:

On August 29, 1923, between five and six o'clock in the afternoon, the plaintiff, fifty-five years of age, while crossing a track in defendant's railroad terminal yard in Hoboken, was struck by one of defendant's trains, consisting of an engine and two empty box freight cars, which was backing in an easterly direction towards the river. The locomotive was on the west or land side headed west. Plaintiff was struck by the east end of the east car (which would be the rear car if the train were proceeding ahead instead of backing). The plaintiff was employed on a lighter called the *Texas*, which was delivering railroad ties to defendant, and which was moored on the north side of a basin or slip running from the river, west, into the terminal. Plaintiff lost his right leg two or three inches above the knee.

Plaintiff slept on the barge *Texas* at night. The barge had been towed over to the slip or basin on the preceding day, August twenty-eighth. Plaintiff had remained on board on the night of the twenty-eighth. On August twenty-ninth plaintiff and the captain of the *Texas* had been engaged all day in unloading the ties. They had not completed the unloading and were to continue it the next morning. At the end of the day's work, about five o'clock, the captain of the barge, whose deposition was read as part of defendant's case, went home. Plaintiff left the lighter about the same time, to get his supper. He got up on the dock and proceeded across the yard towards the Washington street or Ferry street gate. He had done the same thing the evening before, returning to the lighter the same way.

The lighter was moored to the west of a small ferry stage or landing shown on photographs in evidence, and the plaintiff's course on leaving the lighter and returning to it would be to the west of this ferry slip, across the yard.

Defendant's case is based largely on the proposition that people coming from vessels in the slip, in leaving the yard should turn to the east or towards the river, and that in going to the vessels in the slip they should come in from the east or river side. Whereas, plaintiff's claim is that the nearest way to get out of the yard to his destination, Washington street, Hoboken, was to turn to the

left or west, and that on returning to the boat, the direct and usual course was to come in through the Washington street gate and cut across the yard to the slip.

This was one of the radical issues in the case, plaintiff producing evidence that boatmen and others were accustomed to use the Washington street gate, and defendant claiming that the proper route was the more roundabout journey by way of the station and ferry house towards the river.

In either case, people coming from or going to boats in the slip had to cross three tracks running parallel to and adjoining the bulkhead.

I do not think there can be any dispute about the fact that plaintiff was rightfully on the lighter. He was a longshoreman by occupation, but followed this particular lighter at the time, being employed through the captain by the hour as an assistant in loading and unloading — sometimes acting as a watchman, although on this particular trip he was not acting as a night watch-man, but at the same time he slept on the boat. Defendant says his day's work was finished and that he was under no obligation to come back to the boat, that the work of unloading was not to be resumed until the morning of the thirtieth. I think plaintiff was rightfully on the boat, and entitled to go from the boat for the purpose of getting his meals, and to return to it to sleep. If at the time of the accident he was following a route usually and customarily taken to get to the boat, he was not a trespasser and was more than a mere licensee. He was a person engaged in transacting business with the defendant and was entitled to the exercise of reasonable care and precaution by defendant to avoid injuring him.

There is a radical difference between the story told by the plaintiff as to the facts of the accident, and the story told by the witnesses called by defendant. There is no dispute that this was the first time the plaintiff had worked at this yard or dock or pier. Relating his experience, he says that having had his supper on the evening of the twenty-ninth he was returning to the boat, coming back by way of the Washington street gate. He had gone out through that gate and came back through it. This was the route he took the night before (the twenty-eighth). He was to sleep on the boat; the job of unloading the ties had not been completed. He had not been paid his wages. When he left the boat to go to his supper through the Washington street gate, he saw other people going out the same way, and when he returned there were other people walking ahead of him. He came across the yard and reached the three tracks which ran along the bulkhead. He

says there were cars standing on the second or middle track. He started to cross the tracks and just as he was crossing the middle track, about two feet behind the standing car, it suddenly started or backed down on him without warning. He says there was no one on the cars and that these same cars were standing on the middle track when he left to get his supper. He says they extended east of the point where his boat lay alongside the bulkhead, that is, towards the river, towards the point where the small flat-boat ferry, used in crossing the basin, landed. When he left the lighter to get his supper he had to turn to the east and go around these standing cars in order to cross the three tracks. Coming back he says he crossed the third track which was farthest from the bulkhead, and it was while crossing the second or middle track that the cars backed down on him. He said in answer to a question by the trial justice that he crossed " straight over," that he did not walk along the third track before crossing.

This is entirely contrary to the story told by defendant's witnesses. Their claim is that the train of two cars on the second track was in motion, backing up. A brakeman who testified that he was on the rear end of the second car standing on the step on the north side of the car, northeast corner, said that he saw plaintiff walking east between the second and third tracks, and that when the cars, in motion, were about two car lengths away from plaintiff he " hollered at him," but plaintiff continued to walk east until he suddenly turned south across the track on which the cars were backing. The brakeman says he jumped from the car and signaled the engineer to stop, but plaintiff was struck by the northeast corner of the car. The train stopped within a car length. Defendant called a witness who says he was on the tracks opposite the ferry landing " guarding the crossing at the old ferry," who testified that he saw plaintiff walking east along the tracks, that is, coming towards the witness, that the train was also backing down and that plaintiff turned across the tracks immediately in front of the train. Defendant called as a witness another brakeman who testified that he was on the car next the engine, that he heard Connelly " holler " to the plaintiff, that at the time the train was about fifty feet from plaintiff, but plaintiff walked on between the second and third tracks, say about fifteen feet, and then turned across the track. The engineer on the locomotive which shoved the cars back says his attention was not called to plaintiff; he heard the rear brakeman shout and signal to stop, but did not see plaintiff until after he was struck. Of course the engineer was on the west end of the train; the two cars were backing. Although the engineer was on the right side of his cab, and presumably

looking back in the direction his train was moving, he did not see plaintiff.

These are the witnesses of the accident. · Plaintiff is his only witness of the actual occurrence, and defendant's witnesses are the employees referred to.

So it will be perceived that there was a sharp issue between plaintiff and the two brakemen — plaintiff testifying that the cars were stationary as they were when he left for supper, that he was crossing straight across the three tracks on his way to his boat, within two feet of the rear car, when it started; defendant's witnesses testifying that plaintiff was walking along the tracks, the backing train overtaking him, and that he suddenly turned in ahead of it.

Much testimony is in the record concerning the usual or proper route to be taken by people coming to or leaving the bulkhead or the ferry landing, defendant contending that they should come and go by the river end of the dock or terminal to the east of the old ferry landing, plaintiff and his witnesses testifying that people went either way, west towards Washington street gate or east towards the river, as they saw fit. It must be conceded, however, that to get to or from the bulkhead it was necessary to cross the three tracks which immediately adjoined it. These tracks laid between a line of coal pockets and the bulkhead. If plaintiff had been run down up in the yard, the route taken by him might have been material. But it seems to me that no matter which way he came or went he had to cross these three tracks. On his return from supper he had come safely across the yard, he had reached the three tracks, and the route he took to get to them does not seem important. He says that when he got to the vicinity of the bulkhead and the point where his boat was moored, these cars, on the middle track, extended east of the point where his boat was fastened. He had to get around them to get to his boat, which was moored about 250 feet west of the point where the little ferry landed.

On the question of defendant's negligence, if we conclude, as I think we must, that plaintiff had a right to leave the boat and return to it, necessarily crossing these three tracks, I think the railroad company was obliged to use reasonable care not to run him down. If the stationary car was suddenly started and backed down upon him without warning, the jury might find that the defendant was negligent. Mr. Justice Van Siclen told the jury: " If you find there was this permissive use of the crossing of these three particular tracks in question, with which we are concerned, then that permissive use implied ample invitation to those who had to cross it, either from the river or the barge, or from this

particular ferry, and if you find that this accident happened within that part of the yard whereat there was this permissive use and, therefore, this implied invitation, then you may say from the evidence in the record, that there was a duty which the railroad company owed to this plaintiff when he attempted to cross track 129 [the middle of the three tracks] on the day in question. If you find in this particular case there was permissive use and this implied invitation, then the defendant owed the plaintiff this duty, and this duty only: To use reasonable care and prudence to see that no injury came to him in crossing that track — to refrain from injuring him, and to see that proper care was used in order to prevent injury when he was about to cross the tracks within that territory or within those restricted grounds. That degree of care is measured by the dangers which this defendant actually knew, or should have known of, which it could anticipate and guard against, and that is the rule of law, whether these parties like it or not, that I give you to apply to the facts as you find them in this case; provided you find that this accident happened within that part of the yard, or yard territory, as I have defined and described."

I think the learned judge correctly stated the law bearing on the question of defendant's negligence. The case is very like *Tapley* v. *New York Dock Railway* (199 App. Div. 664; affd., 234 N. Y. 570); also *Quinn* v. *Staten Island R. T. R. Co.* (224 id. 493), where the Court of Appeals reversed a dismissal of the complaint and held that " The owner of a pier to which barges are invited to make fast in order to receive freight is bound to keep it in reasonably safe condition for those employed in that business."

I think the verdict of the jury finding defendant negligent is supported by the evidence.

Now as to plaintiff's contributory negligence, the learned trial justice told the jury that plaintiff was obliged to use reasonable care in crossing the tracks, and that if he did not, the verdict must be for defendant.

The defendant argues that plaintiff was not crossing the tracks at the point directly opposite the landing stage of the little ferry and that his right to cross was limited to that spot, and the attention of the jury was called to this fact. I think plaintiff's alleged contributory negligence was also for the jury. It must be remembered that there was no regular crossing provided by defendant at any place. No planks were in place to indicate a particular point of crossing. People coming from or going to the ferry stage had to step over the rails and walk on the ties to cross the tracks at any point. There were no signs or warnings. The dock or bulkhead

stretched all the way from the river front inland.   Barges and. lighters tied up to it at this place or that.   The plaintiff's barge when towed to the dock on the  day preceding the accident had been left at a point some 500 feet east of the landing stage. Plaintiff and the captain had pulled it up to the place where the ties were to be discharged, which was some 250 feet west of the ferry landing stage.   The men working on the boats desiring to leave the yard, when they got up on the bulkhead, were confronted by the three tracks lying between the bulkhead and the raised coal pocket.   There was nothing to indicate to a stranger like plaintiff that there was any particular place provided for crossing the three tracks.   When he got up on the bulkhead from his barge, his way over the three tracks was blocked (so he says) by these box cars and he had to move some distance to the east, in the direction of the ferry stage, before he could get across.   And according to plaintiff, this was the situation when he returned from his supper. Desiring to reach his boat, he walked to the east end of the standing cars before attempting to cross.

Plaintiff's witnesses testified that men crossing the three tracks to the slip did not confine themselves to " right at the ferry," they crossed " anywheres they feel like," there was "no path — walked over, catch as catch can," and that " some went east, some went west," " They used any place along."   One witness said, " mostly they crossed at the ferry landing.   Others would go probably along the stringpiece and cross further down or further up."

In my opinion the trial justice properly left the question of plaintiff's contributory negligence to the jury, and their verdict acquitting plaintiff of such negligence is supported by the evidence.

If the defendant intended to limit the right to cross these three tracks to any particular place, I think it should have notified the people who had of necessity to cross the tracks, where that place was.   People coming to the dock on lighters and vessels with freight for delivery were assigned a place along the dock or bulkhead.   The only method of leaving or returning to the boats was over these three tracks which immediately adjoined the edge of the wharf.   Boatmen climbing up on the dock had no warning given them as to where they were to cross.   I think it was a question for the jury whether the plaintiff, a stranger to the place, was careless in attempting to cross where he did.   He wanted to get to his boat.   He says the cars blocked his passage and he went around them.

Appellant in its points says that the story of the accident as related by plaintiff and defendant's witnesses is " radically

different," referring to the issue which I have already stated, and refers to the " way " provided by defendant for persons leaving the ferry, and boats, but it will be perceived that appellant is arguing as to the route to be taken in going to or leaving the station, *i. e.,* that persons going to or coming from boats should go round by the river front — the east end. As I have already suggested, I do not perceive the significance of this. Whether they came or went by the river front or the Washington street gates they had to cross the three tracks. Appellant says that it is " indisputable " that plaintiff knew that the place to cross the tracks was the point immediately opposite the ferry. I do not so understand the evidence.

The appellant presents the " Questions on this Appeal " in its points:

" *First.* It is our contention that at the time the plaintiff was injured he was a trespasser, or at best a bare licensee, and upon the evidence in this case the defendant violated no duty that it owed him.

" *Second.* Regardless of the plaintiff's status — whether he was a trespasser or licensee, or an invitee — he failed to prove his own freedom from contributory negligence. On the contrary, from his own story of the accident it appears as a matter of law that he was guilty of such negligence."

As to the first question, I am of opinion that plaintiff was neither a trespasser nor a mere licensee. He was employed on the lighter which was at defendant's dock in the transaction of business of the defendant, unloading ties. He had a right to be there. There was no way in which he could leave his boat or return to it save by crossing these tracks.

The second " question " is defendant's contention that as matter of law plaintiff was guilty of contributory negligence. I think this was for the jury.

In my opinion, the judgment and order appealed from should be affirmed, with costs.

Present — Kelly, P. J., Jaycox, Manning, Young and Kapper, JJ.

Judgment and order unanimously affirmed, with costs.